UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAD ROBERTS, et al., | 24-CV-8162 (LGS) (RFT) |
| Plaintiffs, | |
| -against- | **OPINION & ORDER** |
| LIFEMD ATLANTIC PATIENT MEDICAL CARE, P.C. | |
| Defendant. | |

### INTRODUCTION

Defendant LifeMD Atlantic Patient Medical Care, P.C. ("LifeMD Atlantic" or

"Defendant")[1] filed a letter requesting a pre-motion conference regarding its intent to move for

(1) a determination under Federal Rule of Civil Procedure 17(c) concerning whether Plaintiff

Brad Roberts requires the appointment of a guardian ad litem or other legal representative due

to his alleged incompetence and (2) disqualification of Plaintiffs' counsel under New York Rule

of Professional Conduct 3.7. (*See generally* ECF 65, Def.'s 11/21/25 Ltr.)[2] For the reasons set

forth below, LifeMD Atlantic's application is DENIED IN PART, in that Plaintiffs' counsel is not

---

[1]    Puopolo M.D., P.C. was the original defendant in this action. (*See generally* ECF 1, Compl.) LifeMD Atlantic was substituted for Puopolo M.D., P.C. as of February 2, 2026. (*See* ECF 97, Order.)

[2]    As the Second Circuit has explained, "an incompetent plaintiff sues by a prochein ami*,* or next friend, and an incompetent defendant defends by a guardian ad litem," but "the duties and powers of both types of representatives are identical," so that "the term guardian ad litem is often used to refer to the representative appointed to a plaintiff or defendant." *Ferrelli v. River Manor Health Care Ctr.,* 323 F.3d 196, 198 n.1 (2d Cir. 2003) (quoting *Dacanay v. Mendoza,* 573 F.2d 1075, 1076 n. 1 (9th Cir.1978)). In this opinion and order, I use the terms legal representative, guardian ad litem, guardian, and next friend interchangeably.

    Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

disqualified, and no hearing will be held to determine whether Plaintiff Brad Roberts requires the appointment of a legal representative; and application is GRANTED IN PART, in that, on Plaintiffs' consent, either Brad Roberts' mother, Abbe Roberts, or his sister, Blake Roberts, shall serve as his next friend for purposes of prosecuting this lawsuit.

## I.    Factual Background[3]

Plaintiffs Brad and Stacey Roberts are a married couple living in South Carolina. (*See* ECF 99, Am. Compl. at 1-2, 54.) Plaintiffs worked for non-party LifeMD Inc. ("LifeMD"), an affiliate of Puopolo M.D., P.C. ("Puololo M.D."), until March 2024. (*See* ECF 55, Ans. & Countercls.  ¶ 1.)[4] Defendant LifeMD Atlantic is a healthcare entity incorporated under the laws of New Jersey; at all relevant times, non-party Dr. Anthony Puopolo ("Dr. Puopolo") owned and operated LifeMD Atlantic and served as its agent. (*See* ECF 99, Am. Compl. ¶¶ 3, 5-6, 9.)

Brad Roberts alleges that he engaged Dr. Puopolo for remote treatment and that from November 2022 through November 2023, Dr. Puopolo prescribed him with "multiple overlapping and conflicting doses of glucagon-like peptide-1 weight loss medication." (ECF 99, Am. Compl. ¶¶ 10-12.) Plaintiffs further allege that Dr. Puopolo failed to follow the drug manufacturer's guidelines on dosage and titration, resulting in Brad Roberts' "severe and permanent personal injuries." (*See* ECF 99, Am. Compl. ¶¶ 15, 33.) Specifically, Brad Roberts alleges that he began experiencing neurological symptoms such as equilibrium and balance

---

[3]     I set forth the factual background based on the parties' pleadings.

[4]     In its combined Answer and Assertion of Counterclaims, Defendant restarts the numbering of its paragraphs on page 6. This citation refers to the second paragraph labeled paragraph 1.

issues, slurred speech, memory loss, poor concentration and focus, and difficulty expressing ideas, beginning in the fall of 2023. (*See* ECF 31, Pls.' Opp. to Def.'s Mot. for Summ. J. at 4.)

On March 9, 2024, Brad and Stacey Roberts executed separation agreements (the "Brad Roberts Agreement" and the "Stacey Roberts Agreement," or collectively "the Agreements") in connection with their separation from LifeMD. (*See* ECF 55, Ans. & Countercls. ¶ 1;[5] ECF 31, Pls.' Opp. to Def's Mot. for Summ. J. at 1.)

## II.    Procedural History

Plaintiffs Brad and Stacey Roberts initially brought suit against Puopolo M.D.; Brad Roberts sued for medical malpractice, lack of informed consent, and negligent hiring and supervision; Stacey Roberts brought suit for loss of consortium. (*See generally* ECF 1, Compl.) Puopolo M.D. moved for summary judgment on the ground that Plaintiffs contractually released their claims in connection with their separation from their former employer, LifeMD. (*See* ECF 23.) In their opposition to Puopolo M.D.'s motion for summary judgment, as relevant here, Plaintiffs argued that Brad Roberts was legally incompetent in March 2024, when he entered into the Brad Roberts Agreement with Puopolo M.D.'s affiliate, which purported to release all claims against Puopolo M.D. (*See* ECF 31.) The Honorable Lorna G. Schofield denied Puopolo M.D.'s motion for summary judgment. (*See* ECF 45, 46.) Judge Schofield then referred the matter for me for general pretrial supervision. (*See* ECF 49, Order of Ref.)

Puopolo M.D. filed an answer with counterclaims for (1) a declaratory judgment that Puopolo M.D. is entitled to the releases by Brad Roberts and Stacey Roberts set forth in the

---

[5]    This citation refers to the second paragraph labeled paragraph 1.

Agreements and (2) breaches of contract by Brad Roberts and Stacey Roberts of the Agreements. (*See generally* ECF 55, Ans. & Countercls.) Plaintiffs moved to dismiss the counterclaims (ECF 63), arguing that Puopolo M.D.'s declaratory judgment claims are duplicative of its breach of contract claims, and that the breach of contract claims are subject to the litigation privilege to the extent that they allege a breach of the non-disparagement provisions of the Plaintiffs' agreements (ECF 64); Puopolo M.D. filed an opposition, countering that the declaratory judgment claims are distinct because they seek forward-looking relief and arise from different facts, and further that the litigation privilege does not apply to contractual breaches of non-disparagement clauses (*see* ECF 80); and Plaintiffs filed their reply (*see* ECF 83). The motion to dismiss the counterclaims is pending before Judge Schofield.

On January 9, 2026, Defendant filed a motion to intervene on behalf of LifeMD, Plaintiffs' former employer and a party to the March 2024 Agreements, arguing that LifeMD has significant financial interests in the case that are not adequately represented by the other parties. (*See* ECF 76, 77.) On January 17, 2026, Plaintiffs filed a pre-motion letter in anticipation of a motion to amend the Complaint to add LifeMD Southern Patient Medical Care, P.C., a telemedicine medical practice affiliated with LifeMD that "oversaw Dr. Puopolo and Brad [Roberts'] treatment." (*See* ECF 85, Pls.' 1/12/26 Ltr. at 1-2.) On February 2, 2026, the parties filed a Stipulation and Proposed Order substituting LifeMD Atlantic for Puopolo M.D. as the defendant in this action; I endorsed the Proposed Order on the same day. (*See* ECF 97.) On February 9, 2026, LifeMD filed an Intervenor Complaint against Plaintiffs. (*See* ECF 101.) On February 10, 2026, Plaintiffs filed a letter addressed to Judge Schofield seeking a briefing

schedule in anticipation of their partial motion to dismiss claims alleged in LifeMD's Intervenor Complaint. (*See* ECF 107.)

On November 21, 2025, Defendant requested a pre-motion conference regarding its intent to move for a determination under Federal Rule of Civil Procedure 17(c) whether Brad Roberts requires the appointment of a legal representative due to his alleged incompetence and for disqualification of Plaintiffs' counsel under New York Rule of Professional Conduct 3.7, which prohibits a lawyer from serving as an advocate before a court "in a matter in which the lawyer is likely to be a witness on a significant issue of fact." (ECF 65, Def.'s 11/21/25 Ltr. at 2 (citing N.Y. Bar Ass'n R. Pro. Conduct 3.7(a)).) Defendant argued that, because "Plaintiffs have asserted that Mr. Roberts currently lacks capacity and lacked capacity at the time this suit was filed, the Court must determine under Rule 17(c)(2) whether he is incompetent and if a guardian should be appointed"; Defendant also took the position that Plaintiffs' counsel should be disqualified because they are "critical witnesses" to Brad Roberts' mental status. (*See* ECF 65, Def.'s 11/21/25 Ltr. at 1, 3.)

On November 23, 2025, Plaintiffs filed a letter opposing Defendant's request for a pre-motion conference, stating that they would agree to appointment of Stacey Roberts as Brad Roberts' next friend for purposes of this litigation, which would formalize the status quo; and denying any factual or legal basis for counsel's disqualification where "dozens" of other witnesses are available to testify and counsel did not possess any relevant, non-privileged information about Brad Roberts' mental capacity. (ECF 66, Pls.' 11/23/25 Ltr. at 1-3.)

The request for a pre-motion conference on a motion by Defendant to determine whether Brad Roberts needs a legal representative and to disqualify counsel falls within the

scope of my reference. I held a conference on December 5, 2025, during which I stated that I was not going to disqualify Plaintiffs' counsel on the ground that the lawyers are witnesses to Brad Roberts' mental status who might be called on to testify against Brad Roberts' interests, because there are many other witnesses who would be better positioned to discuss Brad Roberts' mental status than Plaintiffs' counsel. (*See* ECF 71, 12/5/25 Hr'g Tr. at 3:25-4:13.)

I also noted that the appointment of a next friend could obviate future concerns about Brad Roberts' competency. (*See id*.) And I explained that interests of judicial economy favored choosing a next friend without a competency hearing, which could distract from the parties' ability to focus on completing discovery. (*See id*. at 24:3-12.) I directed the parties to file letters on the docket explaining their positions on whether any of the family members proposed by Plaintiffs' counsel at the conference would be suitable next friends of Plaintiff Brad Roberts in connection with this litigation. (*See* ECF 68, Order.)

The parties duly filed the letters required by my December 8, 2025 order (ECF 68). Plaintiffs argued that any of the following individuals would be an appropriate next friend to Brad Roberts for purposes of this litigation: Stacey Roberts (his wife); Jamie Roberts (his uncle); Abbe Roberts (his mother); and Blake Roberts (his sister). (*See* ECF 69, Pls.' 12/13/25 Ltr. at 2-3.) Defendant countered that the Court may not appoint a next friend without holding a hearing and that none of the proposed next friends are suitable, because Stacey and Jamie Roberts are fact witnesses and because all four relatives have failed to provide Brad Roberts "with advice in his best interests"; Defendant asserted that if the Court appoints a next friend for Brad Roberts, the Court should appoint someone independent and objective, meaning without a prior close relationship with him. (ECF 79, Def.'s 1/9/26 Ltr. at 1-4.) Plaintiffs filed a

6

letter in reply, pointing out that Defendant failed to identify anyone to serve as Brad Robert's

next friend or provide caselaw challenging Abbe or Blake Roberts' ability to fulfill the role. (*See*

ECF 81, Pls.' 1/11/26 Ltr.)

On December 15, 2025, Defendant moved for a stay of discovery or, in the alternative,

for an extension of the discovery deadline to allow the Court to resolve whether Brad Roberts

should proceed through a next friend in this litigation (ECF 73). The next day, Plaintiffs opposed

the motion (ECF 74). I denied in part and granted in part Defendant's motion, declining to stay

the case but extending the discovery deadline until April 5, 2026 (ECF 75).

**III.     Legal Standard Appointment of a Next Friend Under Rule 17(c)**

> A.     A Party's Capacity To Sue or Be Sued and
>           Procedures for Appointing a Legal Representative

Under Rule 17(b) of the Federal Rules of Civil Procedure, "[the c]apacity of an individual

to sue or be sued is determined . . . by the law of the individual's domicile . . . ." Fed. R. Civ.

Proc. 17(b). Brad Roberts is a South Carolina domiciliary (*see* ECF 99, Am. Compl. ¶ 1); however,

in their briefing, the parties exclusively cite to state and federal cases applying New York law. As

such, I will reference both New York and South Carolina law, which are materially similar on an

individual's capacity to sue.

New York law provides that "[a] party who is of full age may prosecute or defend a civil

action in person or by attorney unless he has been judicially declared to be incompetent to

manage his affairs . . . ." *Anonymous v. Anonymous,* 3 A.D. 2d 590, 594 (2d Dep't 1957). ("[I]t

has been uniformly determined that a person of unsound mind but not judicially declared

incompetent may sue and be sued . . . ."). *Id.* South Carolina law similarly provides that litigants

who may be impaired but who have not been deemed incompetent by a court may proceed without appointment of a legal representative. *See, e.g., Zaragoza v. Zaragoza,* 420 S.E.2d 516, 517-18 (S.C. Ct. App. 1992) (affirming the trial court's decision to allow a plaintiff to continue to prosecute his own case without a legal representative even though the plaintiff, who had dementia, experienced memory lapses and required assistance organizing his affairs); *Rogers v. Rogers,* 851 S.E. 2d 447, 454 (S.C. Ct. App. 2020) (concluding that the trial court had not erred by failing to appoint a legal representative for a litigant with a traumatic brain injury even though she had demonstrated illogical behavior because she had not raised her competence at trial).

Federal Rule of Civil Procedure 17(c) provides, in relevant part:

Minor or Incompetent Person. . . .

. . . .

*Without a representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action.

Fed. R. Civ. P. 17(c).

"[T]he duty to appoint or make such other order – arises after a determination of incompetency." *Ferrelli v. River Manor Health Care Ctr.,* 323 F.3d 196, 201 (2d Cir. 2003). However, Rule 17(c) provides "no guidance regarding the circumstances that warrant a competency inquiry . . . ." *Id.* The Second Circuit has indicated that:

If a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental

8

illness of the type that would render him or her legally incompetent, it likely would be an abuse of the court's discretion not to consider whether Rule 17(c) applied.

*Id.*

"The party seeking appointment of a guardian must show by a preponderance of the evidence that the individual's condition impedes her ability to protect her rights." *Bowen v. Rubin*, 213 F. Supp. 2d 220, 223 (E.D.N.Y. 2001); *see also Grapner v. Atl. Land Title Co.,* 416 S.E.2d 617, 618 (S.C. 1992) ("Mental incompetence is established by credible evidence that the subject, because of mental impairment, has become incapable of managing his own affairs."). When presented with a sufficiently robust record, a court may appoint a guardian ad litem without holding a Rule 17(c) hearing. *Bowen,* 213 F. Supp. 2d at 224-25 (citing *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 656-57 (2d Cir. 1999) and finding that an evidentiary hearing would be redundant in light of the unrebutted affidavits submitted by the plaintiffs' doctors); *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1296 (S.D.N.Y. 1986) (declining to hold an evidentiary hearing on a committee's conflicts in serving as a party's next friend, where "incontrovertible facts" demonstrated sufficient conflicts such that a hearing would serve no purpose but to delay the case).

However, due process considerations limit a court's power to appoint a legal representative, because "plaintiffs possess liberty interests in avoiding the stigma of being found incompetent . . . and in retaining personal control over the litigation . . . ." *Bowen,* 213 F. Supp. 2d at 224 (citing *Neilson,* 199 F.3d at 651); *see also Walker v. Frericks,* 354 S.E.2d 915, 919 (S.C. Ct. App. 1987) (emphasizing the importance of preserving a competent person's right to control their own litigation). As a result, a court must balance "(1) the private interest affected

by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value of additional or different procedural safeguards; and (3) the government's interest." *Bowen,* 213 F. Supp. 2d at 224 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)); *see also Cruz v. Lee*, No. 14-CV-4870 (NSR), 2023 WL 7384639, at *1-2 (S.D.N.Y. Nov. 8, 2023) (appointing a guardian ad litem without a Rule 17 hearing where the record contained "voluminous medical records" documenting the plaintiff's condition and the defendant did not take a position as to the potential appointment); *Wilson v. Ball,* 523 S.E.2d 804, 807 (S.C. Ct. App. 1999) (discussing the due process considerations favoring allowing a litigant to apply his own judgment in a litigation affecting him).

B.    Qualifications for a Next Friend

Rule 17(c) "does not describe who qualifies as next friend. The term is broad enough to include anyone who has an interest in the welfare of an infant [or incompetent person] who may have a grievance or a cause of action." *Child v. Beame*, 412 F. Supp. 593, 599 (S.D.N.Y. 1976); *see also Ad Hoc Comm. of Concerned Tchrs. v. Greenburgh # 11 Union Free Sch. Dist.,* 873 F.2d 25, 31 (2d Cir. 1989) ("*Greenburgh*") (quoting *Child,* 412 F. Supp. at 599); *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990) ("[T]he next friend must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate."); *Fleming v. Asbill,* 483 S.E.2d 751, 753 (S.C. 1997) (explaining that a guardian ad litem is appointed to assist a court in "properly protecting the interests of an incompetent person").

In this Circuit, a court is required only to "consider the good faith of those claiming to speak for the infant [or incompetent person] and satisfy itself that the next friend is motivated by a sincere desire to seek justice on the infant's [or incompetent person's] behalf."

10

*Greenburgh,* 873 F.2d at 30-31; *see also* 6A Charles A. Wright, *et al., Federal Practice and Procedure* § 1572 at 513 (1990) ("[T]here are no special requirements for the person suing as next friend."). However, the Second Circuit has explained that it is preferable for the next friend to be someone with whom the incompetent person has a relationship:

> While there ordinarily should be a significant relationship, that requirement is relaxed when the real party lacks any close relative or friend that can act on his or her behalf. In those cases, another person can assume the mantle of next friend, provided the person can show some relationship or other evidence that would suggest the next friend is truly dedicated to the interests of the real party. At the same time, if the proposed next friend has little or no relationship with the real party in interest, her appointment as next friend should be viewed skeptically — as the lack of any relationship may belie the next friend's claim that she is advancing the real party's best interests.

*Doe v. Hochul*, 139 F.4th 165, 179 (2d Cir. 2025).

An individual would be an unsuitable next friend if he or she is likely to be a fact witness who would testify adversely to the incompetent person or is someone who has or appears to have a conflict of interest with the incompetent person. *See S.M. by King v. City of New York*, No. 20-CV-5164 (JPO), 2023 WL 2691454, at *5 (S.D.N.Y. Mar. 29, 2023) (determining that an individual was an inappropriate choice for next friend where the person was "deeply embroiled in the facts and circumstances" of the case, which could have resulted in his "being called as fact witness . . . and testifying in a manner adverse to [the plaintiff]"); *Resnick v. Zoldan*, 134 A.D.2d 246, 248 (2d Dep't 1987) (instructing the lower court that, if a guardian were to be appointed, it should be someone new, because "the present guardian's personal and professional relationship with the child's stepfather could give rise to a potential appearance of impropriety or conflict of interest"); *see also Murray by Murray v. Murray,* 426 S.E.2d 781, 784 n.1 (S.C. 1993) (noting that a potential beneficiary of an incapacitated litigant's estate could not

11

serve as guardian ad litem in the incapacitated litigant's divorce action due to the conflict of interest).

**IV.    Analysis**

I note at the outset that I am in the unusual position of considering whether a party is incompetent and requires appointment of a next friend even though no one has asked the Court to find that party to currently be incompetent. Defendant denies that Brad Roberts needs a guardian or next friend, taking the position that he is competent. Defendant nevertheless argues that a hearing is required, citing *Lewis v. Newburgh Hous. Authority*, 692 F. App'x 673, 674 (2d Cir. 2017), which held that the trial court had abused its discretion in failing to conduct a competency hearing for a pro se plaintiff who was acting erratically and who had recently been adjudicated incompetent in a criminal proceeding. (*See* ECF 65, Def.'s 11/21/25 Ltr. at 3 (citing *Lewis,* 692 F. App'x at 674).) Defendant contends that the affidavits upon which Plaintiffs rely to support a conclusion that Brad Roberts is incompetent when he signed the Brad Roberts Agreement are insufficient evidence of his current mental status because the affidavits are stale, with the most recent one being dated over a year ago. (*See* ECF 79, Def.'s 1/9/26 Ltr. at 3 n.5.) But Defendant seeks a hearing in the hope that the Court will conclude that Plaintiff is competent. (*See* ECF 79 *id*. at 1.)

Plaintiffs take the position that Brad Roberts is incompetent but that he does not require the appointment of a next friend because he has not previously been adjudicated incompetent. (*See* ECF 69, Pls.' 12/13/25 Ltr. at 1.) They contend that an evidentiary hearing would be a waste of resources, because the Court does not need to rule that Brad Roberts is

currently incompetent in order to appoint a next friend for him given that Plaintiffs have consented to such an appointment. (*See id.* at 1; ECF 81, Pls.' 1/11/26 Ltr. at 1.)

A.    Whether a Competency Hearing Is Required for Brad Roberts

Plaintiffs have cited to New York law holding that "[a] party who is of full age may prosecute or defend a civil action in person or by attorney unless he has been judicially declared to be incompetent to manage his affairs . . . ." (ECF 69, Pets.' 12/13/25 Ltr. at 1 (citing *Anonymous,* 3 A.D. 2d at 594).) Defendant has identified no case law to the contrary. South Carolina law likewise allows an impaired party to prosecute or defend his own claim in the absence of a judicial finding of incompetence. *See Zaragoza,* 420 S.E.2d at 517-18.

Although Plaintiffs take the position that Brad Roberts is currently incompetent, he has never been found by a court to be incompetent. (*See* ECF 69, Pls.' 12/13/25 Ltr. at 1.) Accordingly, New York and South Carolina law do not prohibit Brad Roberts from pursuing this case without a guardian ad litem or next friend.

Similarly, because Rule 17(c)'s duty to appoint a legal representative or make such other order as is appropriate to protect an incompetent litigant does not arise until "after a determination of incompetency," *Ferrelli,* 323 F.3d at 201, Rule 17(c), without more, does not require me to appoint a legal representative for Brad Roberts, who has never been judged incompetent.

I therefore turn to whether the circumstances of this case require me to hold an evidentiary hearing to determine whether Brad Roberts is incompetent, such that he needs a next friend to prosecute this case. I conclude that I am not obliged to hold such a hearing, which would be a distraction from the core issues in this matter.

13

Rule 17(c) is silent about the circumstances that warrant a competency hearing, and so the text of the Rule does not compel me to hold a competency hearing. Nor does the Second Circuit's guidance in *Ferrelli* require me to hold an evidentiary hearing. *Ferrelli* teaches that it would likely be an abuse of discretion not to consider the applicability of Rule 17(c) when a litigant has previously been adjudicated incompetent or when the Court has received "verifiable evidence" that a litigant is incompetent, but Rule 17(c) does not necessarily require the Court to hold an evidentiary hearing to determine competence. *Ferrelli,* 323 F.3d at 201-203 (finding that the district court did not abuse his discretion by declining to conduct a sua sponte competency inquiry where a litigant's behavior potentially raised concerns about her mental status).

In connection with Plaintiffs' opposition to Defendant's motion for summary judgment, Plaintiffs submitted evidence of Brad Roberts' mental status in the form of affidavits from his treating neurotologist and otolaryngologist (ECF 36-3; ECF 36-12) and his treating psychologist (ECF 36-4; ECF 36-5); reports on weight loss medication from a Board-certified internal medicine physician (ECF 36-7) and on damages from a damages consultant (ECF 36-2); and Brad Roberts' prescription medication records (ECF 36-9). (*See* ECF 31, Pls.' Opp. to Mot. for Summ. J.)  As Defendant points out, none of this evidence is dispositive of Plaintiff's current mental status. (*See* ECF 79, Def.'s 1/9/26 Ltr. at 3 n.5.) I have no basis to conclude that any cognitive impairment experienced by Brad Roberts in March 2024 or thereafter was permanent. As such, there is no significant verifiable evidence before the Court that Brad Roberts is currently incompetent, and he has never previously been adjudicated incompetent. Accordingly, I am not required to hold an evidentiary hearing to determine his competence.

14

The case cited by Defendant to support its position that a hearing is necessary is not to the contrary. The case, which addresses a court's obligation to sua sponte hold a hearing on competency for a pro se litigant who exhibits erratic behavior, is inapposite. *See Lewis,* 692 F. App'x at 675 (vacating the dismissal of a complaint where the trial court failed to conduct a sua sponte inquiry into the pro se plaintiff's mental capacity, despite her recent adjudication of incompetency in a separate federal case and her concurrent hospitalization at a psychiatric center). Brad Roberts is represented by counsel, and I have seen no indication that he is behaving erratically in connection with this case.

I therefore consider whether Brad Roberts may consent to proceeding through a next friend without being adjudicated incompetent. A trial court has broad discretion to fashion appropriate procedures and orders to address the needs of an impaired or potentially impaired litigant. *See, e.g., Doe,* 139 F.4th at 179-80 (emphasizing the discretion afforded to judges under Rule 17); *Perri v. City of N.Y.,* 350 Fed. App'x 489, 491 (2d Cir. 2009) (same). That discretion is limited by due process considerations arising out of a litigant's "liberty interests in avoiding the stigma of being found incompetent . . . and in retaining personal control over the litigation . . . ." *Bowen,* 213 F. Supp. 2d at 224 (citing *Neilson,* 199 F.3d at 651); *see also Walker,* 354 S.E.2d 2at 919. Accordingly, a court must weigh the litigant's case-related interests, the risk of incorrectly depriving the litigant of those interests as a result of the procedures used, and the public interest. *See Bowen,* 213 F. Supp. 2d at 224 (citing *Eldridge*, 424 U.S. at 334-35); *Cruz*, 2023 WL 7384639, at *1-2.

Brad Roberts does not argue that his due process interests should lead the Court to decline to appoint a next friend; he consents to such an appointment. (See ECF 69, Pls.'

15

12/13/2025 Ltr. at 1-2.) While he has not affirmatively requested appointment of a next friend, as did the plaintiffs in *Bowen* and *Cruz,* his consent, like the plaintiffs' applications in *Bowen* and *Cruz,* "indicat[es] his willingness to cede control over the litigation and face the possible stigma associated with guardianship." *Cruz*, 2023 WL 7384639, at *1-2 (quoting *Bowen,* 213 F. Supp. 2d at 224). There is no basis to conclude that Brad Roberts would consent to having a next friend if he did not believe that it would be beneficial for him to have a next friend. I therefore find that Brad Roberts' case-related interests support requiring him to proceed through a next friend.

Brad Roberts' consent mitigates any risk of erroneously depriving Brad Roberts of his liberty interest in controlling the litigation. Requiring Brad Roberts to proceed through a next friend without finding him to be legally incompetent reduces the potential stigma of appointing a next friend for him after a determination that he is incompetent. And Brad Roberts' consent counterbalances any public interest in declining to appoint a next friend for him. *See Cruz*, 2023 WL 7384639, at *2 (explaining that any public interest is less significant when a litigant consents to appointment of a next friend).

Under the circumstances, due process considerations do not prevent me from exercising my broad discretion to require Brad Roberts to litigate this case through a next friend.

B.    Choosing a Next Friend for Brad Roberts

Having concluded that Brad Roberts shall prosecute this suit through a next friend, I consider whether any of the people proposed by Plaintiffs would be suitable or whether, as Defendant contends, I should require Brad Roberts' next friend to be someone independent and objective and therefore someone without a pre-existing relationship with him. I am mindful of the guidance from the Second Circuit that "there ordinarily should be a significant

16

relationship" between a litigant and his next friend. *Doe v. Hochul,* 139 F.4th at 179. I therefore

consider whether Brad Roberts "lacks any close relative or friend that can act on his or her

behalf," which would permit "another person [to] assume the mantle of next friend . . . ." *Id.*

Plaintiffs argue that there are four family members who could appropriately serve as

Brad Roberts' next friend: his wife, his uncle, his mother, and his sister. (*See* ECF 69, Pls.'

12/13/25 Ltr. at 2-3.) Defendant responds that none of these relatives can act on Brad Roberts'

behalf – his wife and uncle are, according to Defendant, likely to be fact witnesses who will

testify adversely to him, and Defendant posits that all four relatives are unsuitable next friends

because they have not prevented Brad Roberts from taking litigation positions that are contrary

to his interests. (*See* ECF 79, Def.'s 1/9/26 Ltr. at 2-4.)

In support of the position that Brad Roberts' wife and uncle are unsuitable next friends

because they are percipient witnesses whose testimony will be harmful to Plaintiffs' case,

Defendant cites *S.M. by King v. City of N.Y.,* No. 20-CV-5164, 2023 WL 2691454, at *5 (S.D.N.Y.

Mar. 29, 2023), in which a parent who was "deeply embroiled" in the circumstances

surrounding his child's confinement was barred from serving as the child's next friend, and

*Resnick v. Zoldan,* 520 N.Y.S. 2d 434 (N.Y. App. Div. 1987), a parental visitation matter where

the court required appointment of a new guardian who did not have a personal and

professional relationship with the child's stepfather. (*See* ECF 79, Def.'s 1/9/26 Ltr. at 2 (citing

*S.M. by King*, 2023 WL 2691454 at *5 and *Resnick,* 520 N.Y.S. 2d at 434).) Defendant also cites

*Colden v. Haskins*, 3 Edw. Ch. 311 (N.Y. Ch. 1839), in which the court replaced the complainant's

next friend because the original next friend was a "material and necessary witness" in the

proceedings. (*See* ECF 79, Def.'s 1/9/26 Ltr. at 3 n.3 (citing *Colden,* 3 Edw. Ch. at 311).)

Plaintiffs respond that Brad Roberts' wife and uncle are not material witnesses, because neither one is a medical or psychological professional and therefore neither one can testify about Brad Roberts' mental status. (*See* ECF 69, Pls.' 12/13/25 Ltr. at 3.) Plaintiffs further assert that Brad Roberts' wife and uncle have exclusively acted to further Brad Roberts' interests. (*See id.*) Defendant correctly counters that "it is black-letter law that a lay witness can appropriately testify as to their observations bearing on another person's competence and capacity." (ECF 79, Def.'s 1/9/26 Ltr. at 3 (citing *Holcomb v. Holcomb*, 95 N.Y. 316, 317 (1884) and *People v. Anonymous*, 213 A.D.3d 580, 582 (1st Dep't 2023)).) Brad Roberts' wife and uncle were close to him during the relevant period; their recollections and impressions of his behavior are therefore relevant to a determination whether he was incompetent when he entered into the Brad Roberts Agreement. While it seems unlikely that Plaintiffs would propose that Brad Roberts' wife and uncle should serve as his next friend if Plaintiffs anticipated that the testimony of his wife and uncle would undermine Plaintiffs' case, it is possible that Defendant could elicit testimony from Brad Roberts' wife and uncle that is unhelpful to Plaintiffs' claims. Accordingly, out of an abundance of caution, it is preferable that neither his wife nor his uncle serve as his next friend.

However, there is no reason why Brad Roberts' mother or sister should not serve as his next friend in connection with this case. Defendant's contention that Brad Roberts' mother and sister would be unsuitable next friends because they have not prevented him from taking litigation positions that are contrary to his interests (*see* ECF 79, Def.'s 1/9/26 Ltr. at 4) has no basis in fact or law. Defendant has not established that Plaintiffs' litigation positions are contrary to Brad Roberts' interest. Even if Defendant had demonstrated that Plaintiffs' litigation

18

positions are ill-advised, there is no basis to conclude that either Brad Roberts' mother or sister

has had any prior involvement with the litigation. To the contrary, Plaintiffs have indicated that

until now, Brad Roberts' wife and uncle have been determining Plaintiffs' litigation strategy.

(*See* ECF 69, Pls.' 12/13/25 Ltr. at 2-3.) And Defendant has identified no case law supporting the

proposition that a friend or relative has an obligation to direct litigation on behalf of an

incompetent person before taking on the role of next friend, or that failure get involved in the

litigation before becoming the litigant's next friend precludes the friend or relative from serving

in that capacity. Accordingly, either Brad Roberts' mother or his sister may serve as his next

friend for purposes of prosecuting this case.

**CONCLUSION**

For the foregoing reasons, Defendant's application (ECF 65) asking the Court (1) to hold

an evidentiary hearing under Federal Rule of Civil Procedure 17(c) to determine whether

Plaintiff Brad Roberts requires the appointment of a legal representative due to his alleged

incompetence and (2) to disqualify Plaintiffs' counsel is DENIED IN PART, in that Plaintiffs'

counsel is not disqualified, and no hearing will be held to determine whether Plaintiff Brad

Roberts requires the appointment of a legal representative; and Defendant's application is

GRANTED IN PART, in that, on Plaintiffs' consent, either Brad Roberts' mother, Abbe Roberts, or

his sister, Blake Roberts, shall serve as his next friend for purposes of prosecuting and/or

settling this lawsuit. By February 20, 2026, Plaintiffs shall file a further amended complaint

reflecting that Brad Roberts is proceeding in this case through a next friend.

Dated: New York, New York
       February 12, 2026

So Ordered.

_____

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

20