UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                         :

BRAD ROBERTS, by and through his next     :
friend ABBE ROBERTS, and STACEY          :
ROBERTS,                                  :
                                         :          24 Civ. 8162 (LGS)
                           Plaintiffs,   :
                                         :       **OPINION & ORDER**
          -against-             :
                                         :

LIFEMD ATLANTIC PATIENT MEDICAL      :
CARE, P.C.,                                  :
                                         :
                          Defendant.   :
----------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       This Opinion & Order addresses partial motions to dismiss certain counterclaims and

intervenor claims in this action.  Movants are Counterclaim and Intervenor-Claim Defendants

Brad Roberts ("Brad") and Stacey Roberts ("Stacey").  For ease of reference, they are referred to

collectively as "Plaintiffs."  LifeMD Atlantic Patient Medical Care, P.C.,[1] referred to herein as

"Defendant," asserts declaratory judgment and breach of contract claims against Plaintiffs (the

"Counterclaims") in connection with Plaintiffs' employment separation agreements (the

"Agreements") with LifeMD, Inc. ("LifeMD").  Intervenor Plaintiff LifeMD asserts the same

claims against Plaintiffs, as well as claims for fraud, conversion and unjust enrichment against

both Plaintiffs and a claim for aiding and abetting fraud against Brad (the "Intervenor Claims").

Plaintiffs move to dismiss in part the Counterclaims and the Intervenor Claims under

---

[1] Puopolo M.D., P.C. was the original Defendant in this action.  On February 2, 2026, LifeMD
Atlantic Patient Medical Care, P.C. was substituted as Defendant.

Rule 12(b)(6).[2]  For the following reasons, Plaintiffs' motions are granted in part and denied in part.

## I.      BACKGROUND

Familiarity with the underlying facts and procedural history is assumed.  *See generally Roberts v. Puopolo M.D., P.C.*, No. 24 Civ. 8162, 2025 WL 2773007 (S.D.N.Y. Sep. 25, 2025) (denying Defendant's motion for summary judgment as to Plaintiffs' claims).  The following facts are taken from the Counterclaims and the Intervenor Claims and are assumed to be true only for the purpose of this Opinion & Order.  *See Emilee Carpenter, LLC v. James*, 107 F.4th 92, 97 (2d Cir. 2024).

LifeMD operates a direct-to-consumer platform that provides in-home healthcare services to patients.  LifeMD does not directly engage in the practice of medicine, but rather contracts with an affiliated network of physician-owned professional corporations ("P.C.s") and professional associations to provide patients with access to licensed medical professionals.

Defendant is a P.C. in LifeMD's affiliated network.  Non-party Dr. Anthony Puopolo, a licensed medical professional, was at all relevant times the President of Defendant.

Plaintiffs, who are husband and wife, began working for LifeMD in late 2020.  Brad served as LifeMD's Chief Operating Officer ("COO").  Stacey, during her tenure at LifeMD, became Director of Patient Care.

Around early 2024, LifeMD discovered that Brad had (1) used his company-issued credit card for numerous personal expenditures and (2) routinely submitted reimbursement requests to LifeMD for personal expenditures, all without LifeMD's authorization and in violation of his employment agreement.  For example, between late 2022 and early 2024, Brad charged his

---

[2] Unless otherwise indicated, all references to "Rules" are to the Federal Rules of Civil Procedure.

company-issued credit card at least $20,713.98 in personal expenses, and between January 1, 2023, and February 23, 2024, Brad submitted approximately $200,000 in reimbursement requests, much of which consisted of personal purchases. Brad improperly charged LifeMD for, among other things, golf apparel and instruction, luxury retail purchases, payments to his children's tutors and private investigator services. LifeMD is unaware of the full extent of Brad's misappropriation of company funds.

Stacey likewise misappropriated LifeMD's funds: Between late 2022 and early 2024, she charged her company-issued credit card at least $13,400.31 in personal expenses, and between January 1, 2023, and February 23, 2024, she submitted at least $15,206.78 in reimbursement requests, much of which consisted of personal purchases. In his capacity as COO, Brad approved at least some of Stacey's charges. Neither Brad nor Stacey has reimbursed LifeMD for these personal expenses.

On February 25, 2024, after LifeMD discovered that Brad was misappropriating company funds, LifeMD sought to terminate Brad's employment. In February and March 2024, the parties extensively negotiated Brad's Agreement.

On March 9, 2024, Brad and Stacey executed the Agreements in connection with their respective separations from LifeMD. The Agreements are substantively similar to each other except for the amount of compensation that Brad and Stacey received. The Agreements state that Plaintiffs release "any and all claims" against the "Company Parties," which is defined to include LifeMD and Defendant. The Agreements also include non-disparagement provisions under which Plaintiffs agree to "refrain from making any disparaging statements about the Company Parties . . . to anyone inside or outside [LifeMD]." Defendant is a third-party beneficiary under the Agreements.

On March 14, 2024, Brad's counsel sent LifeMD an email stating, "[W]e may have a serious problem with the settlement."  On April 24, 2024, Brad's counsel sent LifeMD a letter (1) alleging that Brad's Agreement was obtained "as a result of coercion, duress and overreaching" and therefore was unenforceable and (2) seeking to renegotiate the Agreement.  On September 24, 2024, Brad, his counsel and LifeMD participated in a mediation, but no resolution was reached.

On October 28, 2024, Plaintiffs commenced this action.  The Complaint alleges that, from November 2022 through November 2023, Dr. Puopolo prescribed Brad "multiple overlapping and conflicting doses" of GLP-1 weight-loss medication and non-FDA-approved synthetic peptides aimed at accelerating weight loss.  The Complaint further alleges that Dr. Puopolo's prescriptions "did not follow the manufacturer prescribing and titration guidelines," that Brad was inadequately monitored and that Brad was not "advised of the risks and benefits associated with any of the drugs that he was prescribed."  The Complaint asserts claims for medical malpractice, lack of informed consent, negligent hiring and supervision and loss of consortium.  Multiple media outlets have since republished the Complaint's allegations, allegedly at Plaintiffs' behest, including the blog Showbiz411 on March 10, 2025, and the *Daily Mail* on March 21, 2025.

Before any discovery, Defendant moved for summary judgment, arguing that the broad releases in the Agreements bar all claims.  In opposing the motion, Plaintiffs conceded that Defendant is a third-party beneficiary to the Agreements but argued that the Agreements were voidable and unenforceable because (1) Brad lacked the capacity to enter into his Agreement due to cognitive impairments and (2) the Agreements were "illegally structured" to evade medical malpractice reporting requirements.  The motion was denied due to questions of fact regarding the enforceability of the Agreements.

## II.    STANDARD

"A motion to dismiss a counterclaim, third-party claim, and cross-claim is evaluated under the same standard as a motion to dismiss a complaint." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 282 (S.D.N.Y. 2023).[3] To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Emilee Carpenter*, 107 F.4th at 99. It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *United States ex rel. Camburn v. Novartis Pharms. Corp.*, 124 F.4th 129, 139 (2d Cir. 2024). Under Rule 12(b)(6), a court "accept[s] as true all nonconclusory factual allegations in the complaint and draw[s] all reasonable inferences in the Plaintiffs' favor." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). A court "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

New York law governs state law issues in this dispute because the parties' submissions assume that New York law applies. *See Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 n.5 (2d Cir. 2023) ("[I]mplied consent is sufficient to establish the applicable choice of law.").

## III.    DISCUSSION

### A.    Declaratory Judgment Claims

Both the Counterclaims and the Intervenor Claims seek a declaratory judgment that the Agreements are valid and enforceable. Plaintiffs' motion to dismiss these claims is granted.

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Among the factors courts consider in determining whether to exercise jurisdiction under the Declaratory Judgment Act are "(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the issues involved; [and] (2) whether such a judgment would finalize the controversy and offer relief from uncertainty."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023).  Courts have "broad discretion to weigh th[ose] factors," and no one factor is dispositive.  *Id.* at 100.

"[C]ourts reject declaratory judgment claims when other claims in the suit will resolve the same issues, because, under such circumstances, a declaratory judgment will not serve any useful purpose."  *Jujamcyn Theaters LLC v. Fed. Ins. Co.*, 659 F. Supp. 3d 372, 383 (S.D.N.Y. 2023) (dismissing declaratory judgment claim as duplicative of breach of contract claim).  "Accordingly, when a declaratory judgment claim seeks a declaration of the same rights as will be determined under a [claimant]'s action for breach of contract, it is duplicative and may be dismissed."  *CVS Albany, LLC v. 1688 Rojav Realty, LLC*, No. 24 Civ. 7145, 2025 WL 2614077, at *3 (S.D.N.Y. Sep. 10, 2025) (same and collecting cases).

The declaratory judgment claims are dismissed because they are duplicative of Defendant's and LifeMD's breach of contract claims.  The declaratory judgment claims seek a determination that the Agreements are valid and enforceable, an issue that necessarily will be resolved in adjudicating the breach of contract claims.

Defendant argues that the declaratory judgment and breach of contract claims are not duplicative because the breach of contract claims are "backward-looking, addressing Plaintiffs'

past conduct," while the declaratory judgment claims "are forward-looking and seek resolution of an ongoing, live controversy concerning Defendant's present and future rights under the Agreements." This argument is unavailing because the allegations in the Counterclaims and the Intervenor Claims concern only past conduct. *See Scharf v. Jombihis Corp.*, No. 25 Civ. 8044, 2026 WL 752971, at *10 (S.D.N.Y. Mar. 17, 2026) ("[T]here is no basis for declaratory relief where only past acts -- such as a breach of contract for which damages are sought -- are involved.").

Defendant further argues that the declaratory judgment and breach of contract claims are not duplicative because they are based on different facts. Specifically, Defendant contends that the breach of contract claims are based on Plaintiffs' "breach[] [of] the release and non-disparagement provisions of the Agreements when they brought this action and disparaged Defendant," while the declaratory judgment claims "are based on Plaintiffs' assertions -- raised for the first time on summary judgment -- that the Agreements as a whole are unenforceable and voidable." That is a distinction without a difference. Even if the claims were prompted by different developments in the litigation, both sets of claims ultimately require resolution of the same issue -- whether the Agreements are valid and enforceable.

LifeMD makes an additional, independent argument that LifeMD as a party to the Agreements has broader rights than Defendant, a mere third-party beneficiary. LifeMD points to "provisions governing the parties' ongoing obligations, including restrictions on Plaintiffs' use of [LifeMD]'s proprietary and confidential information, assignments of intellectual property rights to [LifeMD], and cooperation obligations" and argues that LifeMD requires clarification of those ongoing rights and obligations. But the Intervenor Claims do not allege any dispute regarding these additional provisions of the Agreements. Rather, LifeMD's declaratory judgment claims

seek the same relief as Defendant's -- a declaration that the Agreements are enforceable, i.e., a declaration of the same rights that will be determined under the parties' breach of contract claims.

Plaintiffs' motion to dismiss the declaratory judgment claims is granted.

### B.    Breach of Contract Claims

Both the Counterclaims and the Intervenor Claims assert that Plaintiffs breached the Agreements in two ways -- (1) "by initiating the instant action and asserting claims [they] expressly and voluntarily released," in violation of the Agreements' release provisions, and (2) "by disparaging Defendant in the Complaint and subsequent amendments thereto" and by causing the allegations to be republished, in violation of the Agreements' non-disparagement provisions.  Plaintiffs' motion to dismiss the breach of contract claims based on the second theory is granted.

Under New York law, statements made in the course of, and pertinent to, litigation are entitled to an "absolute privilege" from defamation claims.  *Gottwald v. Sebert*, 220 N.E.3d 621, 628-29 (N.Y. 2023).  Protected statements include those in pleadings and other court filings.  *See Kelly v. Albarino*, 485 F.3d 664, 665-66 (2d Cir. 2007) (under New York law, accusations in affidavit filed in opposition to motion were protected by the litigation privilege); *Deaton v. Napoli*, No. 17 Civ. 4592, 2019 WL 4736722, at *6 (E.D.N.Y. Sep. 27, 2019) (same where statements were in complaint).  The public policy underlying this privilege -- and the reason it is an absolute rather than a qualified privilege -- is to allow participants in litigation to "write or speak with that free and open mind which the administration of justice demands."  *Youmans v. Smith*, 47 N.E. 265, 268 (N.Y. 1897); *accord Sherman v. Graves*, No. 24 Civ. 8494, 2025 WL 1558476, at *3 (S.D.N.Y. June 2, 2025) (New York law).  This principle prioritizes the

8

administration of justice over individual reputational interests.  *See Rosenberg v. MetLife, Inc.*, 866 N.E.2d 439, 442-43 (N.Y. 2007); *Martirano v. Frost*, 255 N.E.2d 693, 694-95 (N.Y. 1969).

Here, the Court applies a similar principle:  that public policy prioritizes speech in the administration of justice over private contractual arrangements.  This principle bars the claims for breach of the Agreements' non-disparagement provisions, which rely solely on statements Plaintiffs made in the course of this litigation.  *See Arts4All, Ltd. v. Hancock*, 773 N.Y.S.2d 348, 351 (1st Dep't 2004) (claim for breach of a non-disparagement clause was "properly dismissed because of the absolute witness privilege").  To conclude otherwise would convert a non-disparagement clause into a de facto release without the notice and clear expectations that a fully negotiated release provision would provide.

Defendant's reliance on *TRB Acquisitions LLC v. Yedid*, 239 N.Y.S.3d 117 (1st Dep't 2025), is unavailing.  In that case, the defendant had threatened to provide damaging testimony to plaintiff's opponent in a separate action to which the defendant was not a party.  *Id.* at 118.  On those facts, the First Department concluded that the litigation privilege did not shield the defendant from claims for breach of a non-disparagement provision.  *Id.* at 119.  The First Department explained that "[t]he litigation privilege does not apply because this action relates to claims of breach of contract, and defendant was not a party to the litigation wherein he threatened to provide . . . information in violation of his contractual obligations."  *Id.*  In contrast, the Counterclaims and Intervenor Claims challenge statements Plaintiffs made in this action.  The public policy rationale underlying the litigation privilege -- namely, to encourage litigants to speak freely during their own judicial proceedings -- applies here in a way it did not in *TRB Acquisitions*.

The Counterclaims and Intervenor Claims also allege "[o]n information and belief" that the challenged statements were republished by media outlets "by Plaintiffs or on their behalf." These allegations do not change the result because of the "fair report" privilege under Section 74 of the New York Civil Rights Law. Section 74 states that "[a] civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding." "The purpose of the statute in part is to implement the public policy in favor of encouraging publication and dissemination of judicial decisions and proceedings as being in the public interest." *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985). Section 74 is construed liberally and protects "substantially accurate" reports of judicial proceedings. *See Alf v. Buffalo News, Inc.*, 995 N.E.2d 168, 169 (N.Y. 2013). "A statement comes within the privilege and is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021). The statute's protections extend to "statements published not only by the media, but also by parties or their counsel." *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019); *see, e.g.*, *Gottwald*, 220 N.E.3d at 629-30 (considering litigant's distribution of embargoed complaint and other statements to media outlets).

At least two courts in this District have held that statements privileged under Section 74 do not create liability for breach of a non-disparagement provision. *See Wexler*, 374 F. Supp. 3d at 314; *Rosen v. Sapir*, No. 20 Civ. 5844, 2021 WL 4523713, at *11 (S.D.N.Y. Sep. 30, 2021). The court in *Wexler* analogized to *Arts4All*, in which the First Department held that the absolute litigation privilege discussed above bars claims for breach of a non-disparagement clause. *See* 374 F. Supp. 3d at 314. The court in *Wexler* reasoned that the same result should follow under

10

Section 74 because the fair report privilege -- like the litigation privilege -- is an absolute and not a qualified privilege, signifying the protection of a greater public interest. *See id.* Like the court in *Rosen*, *see* 2021 WL 4523713, at \*11, this Court agrees with *Wexler* that the public interest underlying Section 74 outweighs the private reputational interests underlying a non-disparagement agreement, such that statements within the scope of Section 74 are privileged from breach of contract claims.

At issue here are "republications" of Plaintiffs' allegations in this action, which Plaintiffs allegedly placed with media outlets. These republications fall comfortably within the definition of a "fair and true" report of this action for purposes of Section 74. The March 10, 2025, Showbiz411 article largely quotes or cites the initial Complaint. The article also includes a screenshot of a portion of an affidavit Plaintiffs submitted in opposition to Defendant's motion for summary judgment.[4] The March 21, 2025, *Daily Mail* article briefly summarizes the allegations in the initial Complaint and devotes most of the discussion to quoting or citing affidavits submitted by Plaintiffs, expressly attributing the statements to the affiants.[5] These articles are "substantially accurate" reports of this action. *See, e.g.*, *Kinsey*, 991 F.3d at 179-80 (Section 74 privilege applied where article quoted declarations filed in case and included images of the declarations); *Wexler*, 374 F. Supp. 3d at 312 (same where press release contained "rhetorical

---

[4] *See* Roger Friedman, *Former Weight Loss Spokesman Suing Doctor He Says Over-Prescribed Ozempic Type Drugs, Caused Him Severe Injuries*, Showbiz411 (Mar. 10, 2025), https://www.showbiz411.com/2025/03/10/former-weight-loss-spokesman-suing-doctor-he-says-over-prescribed-ozempic-type-drugs-caused-him-severe-injuries [https://perma.cc/HVM8-YTGG]. The Counterclaims and Intervenor Claims reference and include links to the at-issue articles. On a motion to dismiss, a court may consider documents incorporated by reference in the complaint. *Santos v. Kimmel*, 154 F.4th 30, 33 (2d Cir. 2025).
[5] *See* Sadie Whitelocks, *I Lost 150 Pounds on Ozempic. I'm Also Losing My Mind, Memory, Sight, Speech and Hearing . . . I Can Barely Walk or Eat*, Daily Mail (Mar. 21, 2025), https://www.dailymail.com/health/article-14507341/ozempic-dieter-suing-doctor-treating-weight-loss-drug.html.

11

hyperbole" but "repeatedly reference[d] the lawsuit"); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 330 (S.D.N.Y. 2021) (same where social media post "clearly dr[ew] from multiple court records").  Even assuming Plaintiffs caused their allegations to be republished, this conduct is protected under Section 74 and cannot be the basis for liability under the Agreements' non-disparagement provisions.

### C.    LifeMD's Claims in the Alternative

Only LifeMD asserts claims against Plaintiffs for fraud, conversion and unjust enrichment. These claims are asserted in the alternative, only in the event the Agreements are found to be unenforceable.

#### 1.  Fraud

Plaintiffs' motion to dismiss the fraud claims is granted.  Under New York law, fraud consists of five elements:  "(1) a misrepresentation or a material omission of fact, (2) which is either untrue and known to be untrue or recklessly made, (3) made for the purpose of inducing the other party to rely upon it, (4) justifiable reliance of the other party on the misrepresentation or material omission, and (5) injury."  *Golobe v. Mielnicki*, 268 N.E.3d 982, 987-88 (N.Y. 2025). Additionally, Rule 9(b) requires that a party alleging fraud in federal court "state with particularity the circumstances constituting fraud."  To satisfy Rule 9(b), a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023).  In other words, the complaint must "describe the who, what, when, where, and how of the fraud." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 544 (2d Cir. 2024).

LifeMD's fraud claims are dismissed because they fail to meet Rule 9(b)'s heightened pleading standard.  The Intervenor Claims allege that Plaintiffs "represented that [their personal] expenses were legitimate business expenses and/or failed to disclose the material fact that such expenses were personal rather than business-related," and that LifeMD "reasonably and justifiably relied on [these] misrepresentations and omissions" in paying the charges on Plaintiffs' company-issued credit cards and reimbursing Plaintiffs' expense requests.  However, the Intervenor Claims do not identify specific statements or omissions by Plaintiffs, and do not allege for each one where, when and by whom each statement or omission was made.  The allegations include only a rough estimate of the amount of funds allegedly misappropriated by Plaintiffs, categories of improper expenditures and a general time frame for the fraud.  That is not enough to satisfy Rule 9(b).  *See, e.g.*, *Buss ChemTech AG v. PCS Phosphate Co.*, No. 25 Civ. 3710, 2026 WL 35380, at *6 (S.D.N.Y. Jan. 6, 2026) (fraud claims dismissed for failure to satisfy Rule 9(b) where allegations "describe[d] the alleged misrepresentations only in broad terms, without pleading the particular statements with sufficient specificity," and "d[id] not identify the specific speakers or specify the time and place of the alleged misrepresentations").

LifeMD cites *United States ex rel. Chorches v. American Medical Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017), for the proposition that "the adequacy of particularized allegations under Rule 9(b) is case- and context-specific."  But the Second Circuit's broader point in *Chorches* was that "[d]espite the generally rigid requirement of Rule 9(b), allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge."  *Id.* at 81-82.  *Chorches* also involved the unique situation of a *qui tam* action, where the relator, suing on behalf of the government, lacked access to the defendant's billing submissions and thus alleged that the relevant facts were uniquely within the defendant's knowledge.  *Id.*  Here, by contrast, the

Intervenor Claims do not allege that any of the relevant information -- the who, what, when, where or how of the fraud -- is uniquely within Plaintiffs' knowledge.

Because LifeMD does not adequately plead fraud, LifeMD's claim against Brad for aiding and abetting fraud necessarily fails as well. *See Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (noting that "[t]o establish liability for aiding and abetting fraud under New York law, the plaintiffs must show . . . the existence of a fraud"); *accord 1650 Broadway Assocs., Inc. v. Sturm*, 210 N.Y.S.3d 19, 22 (1st Dep't 2024).

Plaintiffs' motion to dismiss the fraud claims is granted.

### 2. Conversion

Plaintiffs' motion to dismiss the conversion claims is granted. Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006); *accord N.Y. Packaging II, LLC v. Merchs. Distribs., Inc.*, 249 N.Y.S.3d 591, 593 (2d Dep't 2026). "[I]t is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Advanced Knowledge Tech, LLC v. Fleitas*, No. 21 Civ. 992, 2021 WL 6126966, at *6 (S.D.N.Y. Dec. 28, 2021) (New York law). "To state a claim for conversion of money, the money must be specifically identifiable and segregated, and described or identified in the same manner as a specific chattel." *Id.*

LifeMD's conversion claims are dismissed because they do not allege a specific, identifiable fund. The Intervenor Claims allege that Plaintiffs intentionally and without authority used LifeMD's funds for personal expenditures that lacked any legitimate business purpose, and

14

that Plaintiffs have refused to repay the funds.  However, the allegations broadly reference "Company funds" and approximate figures, including expenditures by Brad of "at least $20,713.98" and "at least approximately $200,000" and expenditures by Stacey of "at least $13,400.31" and "at least $15,206.78."  The allegations do not identify the type of specific, identifiable fund required to plead conversion of money.  *See, e.g.*, *Heckl v. Walsh*, 996 N.Y.S.2d 413, 416 (4th Dep't 2014) (dismissing conversion claim because allegations that defendants "have taken approximately $4 million of [plaintiff]'s cash and/or personal property" did not identify a "specific, identifiable fund"); *PowerFlex Solar, LLC v. Solar PV Pros, LLC*, 217 N.Y.S.3d 694, 700 (3d Dep't 2024) (same where plaintiff alleged that a roughly $1.16 million deposit paid to defendants had been converted but "failed to allege that the money was somehow segregated upon its transfer[s] to" defendants and thus "failed to specifically identify the funds at issue").

Plaintiffs' motion to dismiss the conversion claims is granted.

### 3.  Unjust Enrichment

The Intervenor Claims assert that Plaintiffs were unjustly enriched in two ways -- (1) by retaining the consideration LifeMD paid Plaintiffs under the Agreements while "repudiating the obligations that [LifeMD]'s consideration was intended to secure" and (2) by misappropriating LifeMD's funds for improper personal expenditures.  The second theory arises from the same alleged improper expenditures underlying LifeMD's conversion claims.  Plaintiffs seek to dismiss only the portion of the claims that "relate to the allegedly 'converted property' and/or improper expenditures."  Plaintiffs' motion is denied.

Under New York law, "[t]o recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."

15

*Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022).  "[E]quity does not allow a defendant . . . to keep misappropriated funds."  *Allen v. Zizzi Constr. Corp.*, 211 N.Y.S.3d 67, 68 (1st Dep't 2024).

The Intervenor Claims allege that Plaintiffs were enriched at LifeMD's expense when they used company funds for personal expenses without the company's authorization.  The Intervenor Claims further allege that equity and good conscience require Plaintiffs to return the misappropriated funds.  These allegations are sufficient to plead a claim for unjust enrichment. *See, e.g.*, *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 88 (E.D.N.Y.) (allegations that defendant diverted company funds and customer deposits for personal use sufficiently stated unjust enrichment claim under New York law), *reconsideration granted on other grounds*, 2025 WL 2178194 (E.D.N.Y. Aug. 1), *appeal on other grounds docketed*, No. 25-2189 (2d Cir. Sep. 11, 2025).

Plaintiffs argue that the Intervenor Claims fail to allege unjust enrichment because the at-issue expenses were approved by LifeMD.  Plaintiffs argue that they sought and received authority to use the funds by "providing [LifeMD] unadulterated documentation for the precise item[s] [Plaintiffs] sought reimbursement for."  This argument is unavailing because the Intervenor Claims allege that LifeMD did not authorize the at-issue expenses, and at the motion to dismiss stage, these allegations must be accepted as true.  *See K.W. ex rel. K.A. v. City of New York*, No. 24-3042, 2026 WL 1391967, at *6 (2d Cir. May 19, 2026) ("In considering a Rule 12(b)(6) motion to dismiss, the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side.").

Plaintiffs' motion to dismiss the unjust enrichment claims relating to the alleged improper expenditures is denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' partial motion to dismiss the Counterclaims is **GRANTED**.  Plaintiffs' partial motion to dismiss the Intervenor Claims is **GRANTED** as to the declaratory judgment, breach of contract, fraud and conversion claims and **DENIED** as to the unjust enrichment claims.

For clarity, the following claims survive:

- Defendant's breach of contract claims relating to the Agreements' release provisions;

- LifeMD's breach of contract claims relating to the Agreements' release provisions and

- LifeMD's unjust enrichment claims, asserted in the alternative.

If Defendant and/or LifeMD has additional facts that it believes would cure the deficiencies identified in this Opinion & Order, by **July 7, 2026**, Defendant and/or LifeMD may file a letter not to exceed three single-spaced pages seeking leave to replead and explaining how the proposed amendments cure the deficiencies.  Any letter shall be accompanied by proposed Second Amended Counterclaims or a proposed Amended Intervenor Complaint marked to show changes from the initial filing.  Plaintiffs shall respond, with the same page limitation, by one week after the filing of any letter by Defendant and/or LifeMD.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 63 and 117.

Dated: June 16, 2026
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

17